# **Exhibit A**

FILED
DECEMBER 27, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DAJ

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUSQUEHANNA INTERNATIONAL GROUP, LLP, a Delaware limited liability partnership, | ) ) ) ) | **07 C 7269** |
| Plaintiff | ) ) | |
| v. | ) ) ) | JUDGE GRADY<br>MAGISTRATE JUDGE KEYS |
| RICHARD PFEIL, an individual, PFEIL ELECTRONIC TRADING, LLC, an Illinois limited liability company, NCX, LCC, an Illinois limited liability company, NT PROP TRADING LLC, an Illinois limited liability company, NT FINANCIAL GROUP, LLC, a North Carolina limited liability company, and LARRY NOCEK, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## COMPLAINT

### Preliminary Statement

1.   Plaintiff Susquehanna International Group LLP ("SIG") brings this action to recover amounts which were fraudulently transferred to defendants in January 2004 in order to hinder SIG's rights as a potential judgment creditor. A judgment should be entered declaring that, if and when a judgment is entered against NT Prop Trading LLC ("NT") in favor of SIG in an action now pending in the United States District Court for the Eastern District of Pennsylvania (the "Pennsylvania Action"), the amounts transferred by NT to the defendants herein can be executed upon to satisfy that judgment.

2.  The bench trial of the Pennsylvania Action concluded in July 2007, and the parties are awaiting the court's decision. This action is brought before that decision determines whether SIG is in fact a judgment creditor of NT in order to assure that a four year statute of limitations which may apply to the conduct complained of and which may expire in January 2008 does not preclude SIG from proceeding against the defendants herein. *See* Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq*. This action may be stayed pending the decision from the Eastern District of Pennsylvania.

### The Parties

3.  SIG is a Delaware limited liability partnership with its principal place of business in Bala Cynwyd, Pennsylvania. SIG's two partners are a Delaware corporation with its principal place of business in Pennsylvania, and a Pennsylvania limited liability company with its principal place of business in Pennsylvania. SIG is therefore a citizen of Delaware and Pennsylvania.

4.  Defendant Richard Pfeil ("Pfeil") is an individual residing at W 3426 High Meadow Road, Lake Geneva Wisconsin. Pfeil is a citizen of Wisconsin. At all times material, Pfeil has been the sole owner of Pfeil Electronic Trading, LLC ("Pfeil Electronic"). Pfiel, through an attorney acting as his agent, was one of the two managers of NT.

5.  Defendant Pfeil Electronic was formerly known as Pfeil Commodities Fund, LLC, having changed its name to Pfeil Electronic Trading LLC on or about October 10, 2003. It is an Illinois limited liability company that at all times material was owned and controlled solely by Pfeil and which transacted and had its principal place of business in Chicago, Illinois. Pfeil Electronic is a citizen of Illinois and Wisconsin.

6.  Defendant NCX, LLC ("NCX") is an Illinois limited liability company which at all times material transacted and had its principal place of business in Chicago, Illinois. At all times material, NCX was owned and controlled solely by Pfeil. NCX is a citizen of Illinois and Wisconsin.

7.  Defendant NT is an Illinois limited liability company which at all times material transacted and had its principal place of business in Chicago, Illinois. At all times material, NT had two members, Pfeil Electronic, a citizen of Illinois and Wisconsin, and NT Financial Group, LLC ("NT Financial"), a citizen of North Carolina, Wisconsin and Illinois. NT is a citizen of North Carolina, Wisconsin and Illinois.

8.  Defendant NT Financial is a North Carolina limited liability company which at all times material transacted and had its principal place of business in Chicago, Illinois. At all times material, NT Financial had between 7 and 13 members, each of whom were individuals and citizens of either Illinois or Wisconsin. NT Financial is a citizen of North Carolina, Wisconsin and Illinois.

9.  Defendant Larry Nocek ("Nocek") is an individual who resides at 906 San Carlos Court, Ft. Myers, Florida. He is a citizen of Florida. At all times material, Nocek was one of the two managers of NT. He was also a manager of NT Financial and, as a member of that entity, owned 420 of its 775 member units.

## Jurisdiction

10. The court has jurisdiction of this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.

## The Pennsylvania Action That Makes SIG a Creditor of Defendants Under the Illinois Uniform Fraudulent Transfer Act

11. In May 2003, three former employees of SIG filed the Pennsylvania Action against SIG in Pennsylvania state court. They sought to declare unenforceable certain post-employment restrictive covenants in their employment agreements with SIG in order to be able to freely engage in

- 3 -

certain securities trading related activities. A month before bringing that action, the former employees had formed an entity known as TABFG, LLC ("TABFG") and caused TABFG to enter into a joint venture agreement with NT (the "Joint Venture"). Pursuant to the term sheet describing the agreed upon terms of the Joint Venture, NT and TABFG agreed to equally share the profits of their Joint Venture, and NT agreed to finance the Pennsylvania Action and the trading activities of the former employees through TABFG. NT knew those trading activities would be unlawful if the restrictive covenants were enforceable. NT's participation in that Joint Venture was its only business.

12. In the Pennsylvania Action, SIG counterclaimed against the former employees and sought a preliminary injunction to enforce the restrictive covenants. It also added NT as a defendant to the counterclaim, alleging that by financing trading activities of the former employees which it knew were in violation of the restrictive covenants, NT was liable for tortious interference, conversion, misappropriation of trade secrets and civil conspiracy. SIG sought as relief from the parties to the Joint Venture (*i.e.*, TABFG and NT) an accounting and disgorgement of all profits they earned in the Joint Venture.

13. In June 2003, NT removed the Pennsylvania Action to the United States District Court for the Eastern District of Pennsylvania.

14. On September 16, 2003 the federal court in the Pennsylvania Action issued a preliminary injunction, ruling that the restrictive covenants agreed to by its former employees were reasonable and enforceable and that the employees had misappropriated SIG's trade secrets and violated the restrictive covenants.

15. On May 31, 2006, the court in the Pennsylvania Action granted summary judgment to SIG making permanent the preliminary injunction only on the grounds that the restrictive covenants

were reasonable and enforceable and had been violated. Fishkin v. Susquehanna Partners, G.P., 2006 WL 1517397 (E.D. Pa. 2006). Summary judgment had not been sought on the additional ground that the employees had misappropriated SIG's trade secrets, and that claim therefore remained the subject of a final trial.

16. On March 19, 2007, the court in the Pennsylvania Action ruled that the two joint venturers, TABFG and NT, would be jointly and severally liable for disgorging all profits made by their Joint Venture if it was later determined that the Joint Venture misappropriated any SIG trade secrets. Fishkin v. Susquehanna Partners, G.P., 2007 WL 853769 (E.D. Pa. 2007). A final bench trial on the trade secret misappropriation claim took place in April and May 2007, and following post trial submissions, closing arguments took place in July 2007. As of the filing of this Complaint, the parties are awaiting the court's decision on that claim and the remaining claims against NT for tortious interference, conversion and conspiracy.

### Defendants' Involvement in Fraudulent Transfers Intended To Hinder SIG as a Creditor of NT

17. Having filed claims against NT in the Pennsylvania Action, SIG at all times since has been a "creditor" of NT as that term is defined in the Illinois Uniform Fraudulent Transfer Act, § 740 ILCS 160/2(d).

18. At all times material, pursuant to the terms of the Joint Venture, NT controlled the trading account and bank accounts of the Joint Venture which received the trading income and profits generated by TABFG for the Joint Venture. As of the time the preliminary injunction was issued in September 2003, those trading profits totaled over $3 million. As of January 2004, NT controlled a bank account in a Chicago bank containing approximately $4.1 million in assets belonging to the Joint Venture. The $4.1 million consisted of $2.1 million in trading profits which

had not yet been distributed to the two joint venturers, plus $2 million in capital which had been paid into the Joint Venture by Pfeil Electronic.

19. Once the preliminary injunction was issued in the Pennsylvania Action in September 2003, Defendants Nocek and Pfeil were concerned that some of the trading profits earned for the Joint Venture might have to be disgorged to SIG. NT, therefore, knew as a result of the preliminary injunction ruling that it faced exposure to SIG for disgorgement of the profits it had received as a participant in the Joint Venture.

20. NT had two members, Pfeil Electronics (then known as Pfeil Commodities) and NT Financial, each of which had a 50% equity interest in NT. In January 2004, on exact dates currently unknown to SIG, NT distributed all $4.1 million in its account, its only assets, as follows:

- It paid $2 million to either Pfeil or Pfeil Electronic to return the capital invested by Pfeil Electronic.

- It paid Pfeil Electronic, as one of the two 50% equity members of NT, $600,000 to $650,000 as a profit distribution, plus another $70,000 which Pfeil thought he was entitled to as a "commission."

- It paid NT Financial, the other 50% equity member of NT, a profit distribution which, according to Pfeil's deposition testimony in the Pennsylvania Action, was "somewhat less than" $600,000 to $650,000.

- It paid TABFG a total of $290,000 of which $175,000 went to Cal Fishkin and $115,000 went to Igor Chernomzav.

- It paid attorneys for NT an amount exceeding $50,000.

21. In making all of the above payments, NT rendered itself insolvent and intended to hinder, delay and defraud SIG from ever obtaining damages or profits made by the Joint Venture, the disgorgement of which it knew SIG was seeking in the Pennsylvania Action. NT did not receive any consideration in exchange for the payments. Neither NT nor any of the other defendants disclosed to

SIG that NT intended to make the payments. Nor did any defendant disclose that the payments had been made until SIG took discovery in the Pennsylvania Action which exposed those payments.

22. After receiving the distributions from NT as described above, Pfeil Electronic and NT Financial then in turn distributed all of that money to their members. The distributions went to Pfeil as a member of Pfeil Electronic and to Nocek, as a member of NT Financial. Upon information and belief, Pfeil transferred the amounts he received to another company of which he was sole owner, defendant NCX, LLC. In making those payments, Pfeil Electronic and NT Financial rendered themselves insolvent and intended to further hinder, delay and defraud SIG from recovering its claim as a creditor of NT and TABFG. Neither Pfeil Electronic nor NT Financial received any consideration in exchange for the payments.

23. In May 2005, counsel for NT advised the parties and the court that both NT and NT Financial had dissolved and ceased operations and that he was remaining in the case as counsel for NT only in order to protect the interests of Pfeil.

24. To the extent that the transfers made by NT represented distributions to its members as part of the winding up of the company, they were made in violation of section 8.2 of the NT Operating Agreement. That provision required that any liquidation of the company was to take place only after "the making of reasonable provision for payment of all debts and liabilities of the Company . . . and the setting up of any reasonable reserves for contingent, conditional and unmatured liabilities of the Company . . ." The distributions made in violation of the Operating Agreement therefore exposed the members and managers of NT to liability for unlawful distributions pursuant to section 25-35 of the Illinois Limited Liability Company Act. *See* 805 ILCS 180/25-35.

## Count I - Fraudulent Transfers

25. The allegations in paragraphs 1 through 24 are incorporated by reference herein.

26. Each asset transfer made by NT and its subsequent transferors was made with the actual intent to hinder, delay or defraud SIG in violation of 740 ILCS 160/5(a)(1).

27. Each asset transfer made by NT and its subsequent transferors was made without receiving a reasonably equivalent value in exchange for the transfer in violation of 740 ILCS 160/5(a)(2).

28. NT and each of its transferees intended, believed or reasonably should have believed that as a result of the transfers, NT would be unable to pay its liability to SIG resulting from the Pennsylvania Action once it was established.

**WHEREFORE**, plaintiff prays

A. That the court order each defendant to account for all money it received directly or indirectly from the Joint Venture, NT, Pfeil Electronic, NT Financial or Pfeil;

B. That the court enter an order declaring that, conditioned upon entry of a money judgment in the Pennsylvania Action against NT, assets of the defendants herein up to the amounts indicated below shall be considered to be assets transferred to those defendants in violation of the Uniform Fraudulent Conveyance Act, § 740 ILCS 160/1 *et seq.* and shall be recoverable by SIG to satisfy its judgment against NT:

| | |
|---|---|
| Richard Pfeil | $2,720,000 |
| Pfeil Electronic | $2,720,000 |
| NCX, LLC | $2,720,000 |
| NT Financial | $650,000 |
| Larry Nocek | $350,000 |

C.  That the Court grant such further relief as it deems just and proper.

### Count II - Violation of Illinois Business Corporations Act and Limited Liability Company Act

29. The allegations in paragraphs 1 through 28 above are incorporated by reference herein.

30. To the extent that the transfers made by NT represented distributions to its members as part of the winding up of the company, they were made in violation of section 8.2 of the NT Operating Agreement. The distributions made in violation of the Operating Agreement therefore exposed the members and managers of NT to liability for unlawful distributions pursuant to section 25-35 of the Illinois Limited Liability Company Act, 805 ILCS 180/25-35.

30. At all times material, Nocek and Pfeil were managers of NT Financial and Pfeil was a manager of Pfeil Electronic. Nocek and Pfeil, through his attorney acting as his agent, were also managers of NT.

31. In the event that NT in fact was dissolved, pursuant to the Illinois Business Corporations Act of 1983, 805 ILCS 5/8.65(a)(2) and 12.75, its managers were personally responsible for providing proper notice of the dissolution of the company. No such notice was ever provided.

32. Had proper notice of an intention to dissolve been provided to SIG, it could have prevented NT's fraudulent transfer of its assets by seeking to enjoin the January 2004 distributions.

**WHEREFORE**, plaintiff prays:

A.  That judgment be entered jointly and severally against defendants Nocek and Pfeil for such amount as SIG is determined to be entitled to recover in the Pennsylvania Action to the extent that the amount cannot be collected from the other defendants to this action; and

B.   That the Court grant such further relief as it deems just and proper.

Dated: December 27, 2007

/s/ Steven D. Hamilton
One of the Attorneys for Plaintiff

Edwin E. Brooks (6193734)
David S. Almeida (6285557)
Steven D. Hamilton (6289663)
DRINKER BIDDLE GARDNER CARTON
(Drinker Biddle & Reath LLP)
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606-1698
Tel. 312 569 1425
Fax 312 569 3425

Larry H. Spector
KAUFMANN, COREN & RESS, P.C.
1717 Arch Street, Suite 3710
Philadelphia, PA 19103-2097
(215) 735 8700

*Attorneys for Plaintiff,*
*Susquehanna International Group, LLP*

CH01/ 12526474.1