IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| SUSQUEHANNA INTERNATIONAL GROUP, LLP, a Delaware limited liability partnership, <br><br> Plaintiff, <br><br> v. <br><br> RICHARD PFEIL. <br><br> Defendant. | Civil Action No. 07-CV-7269 <br><br> Jury Trial Demanded |

## AMENDED COMPLAINT

### Preliminary Statement

1.  Plaintiff Susquehanna International Group LLP ("SIG") brings this action to recover amounts which were fraudulently transferred in January 2004 in order to hinder SIG's rights as a potential judgment creditor. A judgment should be entered declaring that, if and when a judgment is entered against NT Prop Trading LLC ("NT") in favor of SIG in an action now pending in the United States District Court for the Eastern District of Pennsylvania (the "Pennsylvania Action"), the amounts transferred by NT to or for the benefit of Richard Pfeil can be executed upon to satisfy that judgment.

2.  The bench trial of the Pennsylvania Action concluded in July 2007, and the parties are awaiting the court's decision. This action is brought before that decision determines whether SIG is in fact a judgment creditor of NT in order to assure that a four year statute of limitations which may apply to the conduct complained of and which may expire in January 2008 does not preclude SIG

from proceeding against Richard Pfeil. *See* Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq*. This action may be stayed pending the decision from the Eastern District of Pennsylvania.

### The Parties

3. SIG is a Delaware limited liability partnership with its principal place of business in Bala Cynwyd, Pennsylvania. SIG's two partners are SIG Financing Inc., a Delaware corporation with its principal place of business in Pennsylvania, and SIG Holding, LLC, a Delaware limited liability company with its principal place of business in Pennsylvania. The members of SIG Holding, LLC as a result of certain changes in its members' corporate status in 2007 are: six Delaware corporations each with their principal places of business in Delaware -- SIG Holding, Inc., Bodel, Inc., Philadelphia Trading, Inc., Brooks Options, Inc., South Bay Trading Holding Inc., and MLD Trading, Inc.; one Pennsylvania corporation with its principal place of business in Pennsylvania – JKG Florida Business Corp; and two Florida corporations with their principal places of business in Florida -- Artay, Inc. and South Bay Trading Florida Business Corp. SIG is therefore a citizen of Delaware, Florida and Pennsylvania.

4. Defendant Richard Pfeil ("Pfeil") is an individual residing at W 3426 High Meadow Road, Lake Geneva Wisconsin. Pfeil is a citizen of Wisconsin. At all times material, Pfeil has been the sole owner of Pfeil Electronic Trading, LLC, formerly known as Pfeil Commodities Fund, LLC. ("Pfeil Electronic") and NCX, LLC ("NCX"). Pfeil Electronic was one of the two members of NT and had contributed $2 million in capital to NT.

### Jurisdiction

5. The court has jurisdiction of this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.

**The Pennsylvania Action That Makes SIG a Creditor of Defendant's Under the Illinois Uniform Fraudulent Transfer Act**

6.  In May 2003, three former employees of SIG filed the Pennsylvania Action against SIG in Pennsylvania state court. They sought to declare unenforceable certain post-employment restrictive covenants in their employment agreements with SIG in order to be able to freely engage in certain securities tradingr elated activities. A month before bringing that action, the former employees had formed an entity known as TABFG, LLC ("TABFG") and caused TABFG to enter into a joint venture agreement with NT (the "Joint Venture"). Pursuant to the Term Sheet describing the agreed upon terms of the JointV enture, NT and TABFG agreed to equally share the profits of their Joint Venture, and NT agreed to finance the Pennsylvania Action and the trading activities of the former employees through TABFG. NT knew those trading activities would be unlawful if the restrictive covenants were enforceable. NT's participation in that Joint Venture was its only business.

7.  In the Pennsylvania Action, SIG counterclaimed against the former employees and sought a preliminary injunction to enforce the restrictive covenants. It also added NT as a defendant to the counterclaim, alleging that by financing trading activities of the former employees which it knew were in violation of the restrictive covenants, NT was liable for tortious interference, conversion, misappropriation of trade secrets and civil conspiracy. SIG sought as relief from the parties to the Joint Venture (*i.e.,* TABFG and NT) an accounting and disgorgement of all profits they earned in the JointV enture.

8.  In June 2003, NT removed the Pennsylvania Action to the United States District Court for the Eastern Districto f Pennsylvania.

CH02/ 22518157.1

9. On September 16, 2003 the federal court in the PennsylvaniaA ction issued a preliminary injunction, ruling that the restrictive covenants agreed to by its former employees were reasonable and enforceable and that the employees had misappropriated SIG's trade secrets and violated the restrictive covenants.

10. On May 31, 2006, the court in the Pennsylvania Action granted summary judgment to SIG making permanent the preliminary injunction only on the grounds that the restrictive covenants were reasonable and enforceable and had been violated. Fishkin v. Susquehanna Partners, G.P., 2006 WL 1517397 (E.D. Pa. 2006). Summary judgment had not been sought on the additional ground that the employees had misappropriated SIG's trade secrets, and that claim therefore remained the subject of a final trial.

11. On March 19, 2007, the court in the Pennsylvania Action ruled that the two joint venturers, TABFG and NT, would be jointly and severally liable for disgorging all profits made by their Joint Venture if itw as later determined that the JointV enture misappropriated any SIG trade secrets. Fishkin v. Susquehanna Partners, G.P., 2007 WL 853769 (E.D.P a. 2007). A final bench trial on the trade secret misappropriation claim took place in April and May 2007, and following post trial submissions, closing arguments took place in July 2007. As of the filing of this action, the parties are awaiting the court's decision on that claim and the remaining claims against NT for tortious interference, conversion and conspiracy.

### Defendant's Involvement in Fraudulent Transfers Intended To Hinder SIG as a Creditor of NT

12. Having filed claims against NT in the Pennsylvania Action, SIG at all times since has been a "creditor" of NT as that term is defined in the Illinois Uniform Fraudulent Transfer Act, § 740 ILCS 160/2(d).

13. At all times material, pursuant to the terms of the JointV enture, NT controlled the trading account and bank accounts of the Joint Venture which received the trading income and profits generated by TABFG for the Joint Venture. That control was subject to the ultimate authorization of Pfeil whose attorney was one of the two managers of NT at all times acting to protect the $2 million Pfeil had invested in NT through Pfeil Electronics. As of the time the preliminary injunction was issued in September2003 , NT's trading profits totaled over $3 million. As of January 2004, NT controlled a bank account in aC hicago bank containing approximately $4.1 million in assets belonging to the Joint Venture. The $4.1 million consisted of $2.1 million in trading profits which had not yet been distributed to the two joint venturers, plus $2 million in capital which had been paid into the Joint Venture using the money invested in NT by Pfeil Electronic.

14. Once the preliminary injunction was issued in the Pennsylvania Action in September 2003, Pfeil and NT were concerned that some of the trading profits earned for the Joint Venture mighth ave to be disgorged to SIG. They knew as a result of the preliminary injunction ruling that NT faced exposure to SIG for disgorgement of the profits it had received as a participant in the Joint Venture.

15. NT had two members, Pfeil Electronics (then known as Pfeil Commodities) and NT Financial Group LLC, each of which had a 50% equity interest in NT. In January 2004, on exact dates currently unknown to SIG, NT distributed all $4.1 million in its account, its only assets, as follows:

- It paid $2 million to either Pfeil or Pfeil Electronic to return the capital invested by Pfeil Electronic.

- It paid Pfeil Electronic, as one of the two 50% equity members of NT, $600,000 to $650,000 as a profit distribution, plus another$70 ,000 which Pfeil thoughth e was entitled to as a "commission."

- 5 -

CH02/ 22518157.1

- It paid NT Financial, the other 50% equity member of NT, a profit distribution which, according to Pfeil's deposition testimony in the Pennsylvania Action, was "somewhat less than" $600,000 to $650,000.

- It paid TABFG a total of $290,000 of which $175,000 went to Cal Fishkin and $115,000 wentt o Igor Chernomzav

- Itp aid attorneys for NT an amount exceeding $50,000.

16.  In making all of the above payments, NT rendered itself insolvent and intended to hinder, delay and defraud SIG from ever obtaining damages or profits made by the Joint Venture, the disgorgement of which it knew SIG was seeking in the Pennsylvania Action. NT did not receive any consideration in exchange for the payments. NT did not disclose to SIG that NT intended to make the payments. SIG did not learn that they had been made until SIG took discovery in the Pennsylvania Action which exposed those payments.

17.  After receiving distributions from NT as described above, Pfeil Electronic then in turn distributed all of that money to Pfeil as a member of Pfeil Electronic. Upon information and belief, Pfeil transferred the amounts he received to another company of which he was sole owner NCX, LLC. Pfeil therefore caused Pfeil Electronic to render itself insolvent and intended to further hinder, delay and defraud SIG from recovering its claim as a creditor of NT and TABFG. Pfeil Electronic received no consideration in exchange for any payments to NCX,LL C..

18.  In May 2005, counsel for NT advised the parties and the court that both NT and NT Financial had dissolved and ceased operations and thath e was remaining in the case as counsel for NT only in order to protect the interests of Pfeil. NT, its two members, NT Financial and Pfeil Electronics, and NCX, LLC have all ceased operations, been dissolved or otherwise failed to maintain their existence.

### Count I - Fraudulent Transfers

19. The allegations in paragraphs 1 through 18 are incorporated by reference herein.

20. Each asset transfer to or for the benefit of Pfeil was made and received with the actual intentt o hinder, delay or defraud SIG in violation of 740 ILCS 160/5(a)(1).

21. Each asset transfer to or for the benefit of Pfeil was made without providing a reasonably equivalent value in exchange for the transfer in violation of 740 ILCS 160/5(a)(2).

22. Pfeil intended, believed or reasonably should have believed that as a result of the transfers, NT would be unable to pay its liability to SIG resulting from the Pennsylvania Action once itw as established.

**WHEREFORE**, plaintiff prays

A. That the court order Pfeil to account for all money he received directly or indirectly from the Joint Venture, NT, Pfeil Electronic or NCX, LLC;

B. That the court enter an order declaring that, conditioned upon entry of a money judgment in the Pennsylvania Action against NT, assets of Richard Pfeil up to the amounts of $2,720,000 shall be considered to be assets transferred to him in violation of the Uniform Fraudulent Conveyance Act, § 740 ILCS 160/1 *et seq.* and shall be recoverable by SIG to satisfy its judgment against NT;

CH02/ 22518157.1

C.  That the Court grant such further relief as itd eems just and proper.

Dated: March 31, 2008

                                    /s/ Warren von C. Baker
                                One of the Attorneys for Plaintiff

Warren von C. Baker (0099406)
Gregory Hosé (6291642)
DRINKER BIDDLE & REATH LLP
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606-1698
Tel. 312 569 1000
Fax 312 569 3000

Larry H. Spector
KAUFMAN, COREN & RESS, P.C.
1717 Arch Street, Suite 3710
Philadelphia, PA 19103-2097
(215) 735 8700
(Pro hac vice)
Attorneys for Plaintiff,
Susquehanna International Group, LLP

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2008, a copy of the foregoing *Amended Complaint* was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>Brenda M Allison
>Horwood Marcus & Berk Chartered
>180 N. LaSalle Street, Suite 3700
>Chicago, IL 60601
>Email: ballison@hmblaw.com

>/s/ Warren von C.B aker
>Warren von C. Baker (Atty. No.0099406)
>DRINKER BIDDLE & REATH LLP
>191 North Wacker Drive, Suite 3700
>Chicago, IL 60606-1698
>Telephone: (312) 569-1000
>Telecopy: (312) 569-3000
>Email: warren.baker@dbr.com

I hereby certify that on March 31, 2008, a copy of the foregoing *Amended Complaint* was mailed, by certified U.S. Mail, postage prepaid, and properly addressed to the following:

>Richard Pfeil
>W 3426 High Meadow Road
>Lake Geneva, WI 53147

>Larry Nocek
>906 San Carlos Court
>Ft. Myers, Florida 33931

>Pfeil Electronic Trading, LLC
>c/o Richard Pfeil
>W 3426 High Meadow Road
>Lake Geneva, WI 53147

>NCX, LLC
>c/o Richard Pfeil
>W 3426 High Meadow Road
>Lake Geneva, WI 53147

NT Prop Trading LLC
c/o Richard Pfeil
W 3426 High Meadow Road
Lake Geneva, W I 53147

NT Financial Group, LLC
c/o Richard Pfeil
W 3426 High Meadow Road
Lake Geneva, WI 53147

/s/ Warren von C.B aker
Warren von C. Baker (Atty. No.0099406)
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive, Suite 3700
Chicago, IL  60606-1698
Telephone: (312) 569-1000
Telecopy: (312) 569-3000
Email: warren.baker@dbr.com